UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUL 12 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-356-GWU

CONNIE JONES,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff originally filed an application for Disability Insurance Benefits (DIB) on March 8, 2001 (Tr. 461-3), which was denied through the level of the Appeals Council. After a period of reconsideration prompted by the undersigned's Memorandum Opinion of September 8, 2004, Jones v. Barnhart, London Civil Action No. 03-419 (Tr. 712-23) and consolidation with a new application for DIB and a new Supplemental Security Income (SSI) application, the case is once again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

1

Jones

2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the

Jones

Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be

Jones

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

5

and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record

6

reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, a new ALJ found that the plaintiff had "severe" impairments consisting of osteoarthritic changes of the spine, multiple joint osteoarthritis, exogenous obesity, hypertension, and an anxiety disorder. Nevertheless, a vocational expert (VE) testified that there would be jobs in the regional and national economies which the plaintiff could perform, in response to a hypothetical question including such factors as a restriction to light level exertion, with a sit/stand option at 15 to 30 minute intervals, occasional climbing stairs and ladders, stooping, bending, crouching, crawling, and kneeling, and a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, and understand, remember, and carry out complex instructions. (Tr. 1016). Thus, the plaintiff was once again found to be "not disabled." (Tr. 626-8).

The original reason for the Court's remand in 2004 was that the ALJ rejected the essentially uncontradicted opinion of a one-time examining source, Dr. M.

Jones

Jorjani, in favor of the opinions of non-examining state agency physicians who did

not have access to the entire record and who did not clearly give the reasons that

their opinions differed from that of the examiner. (Tr. 721-2). On remand, the

plaintiff did not see Dr. Jorjani again, but continued receiving treatment from several

sources, including, most significantly, Dr. Kishore Jadhav, who submitted office

notes reflecting regular examinations since at least June, 2001 through August,

2004. (Tr. 563-7, 765-97). The transcript reflects that Dr. Kishore had obtained a

variety of objective studies over the years, including a lumbosacral spine x-ray in

October, 2000 showing an old trauma at L2-3 with loss of height at L3 and disc

space narrowing with anterior bony bridging (Tr. 923), and a CT scan of the

lumbosacral spine in August, 2001 showing marked disc space narrowing at L2-3

with posterior bulging and some fragmentation of L3 with spinal stenosis (Tr. 919).

The radiologist recommended obtaining an MRI scan, but there was a note that this

could not be done because of metal screws in the plaintiff's pelvis and hips. (Id.).

An x-ray of the hip and pelvis in November, 2001 confirmed previous right proximal

femur and acetabulum surgery with a fixation bar and screws in place. (Tr. 918).[1]

Dr. Kishore treated the plaintiff in 2001 for chronic hip and lower back pain, as well

---

[1]The plaintiff had been involved in a motor vehicle accident in approximately 1986 (Tr. 577) which caused the fracture and subsequent fixation surgery, and she received DIB until being terminated in July, 1999, due to medical improvement. (Tr. 616-17, 720). This Court upheld the termination in a Memorandum Opinion issued in November, 2002. Jones v. Barnhart, London Civil Action No. 01-256 (E.D. Ky.).

8

as elevated blood pressure, and noted, for example, hip crepitus and pain in a November, 2001 examination. (Tr. 565). Although her hypertension was controlled with medication by early 2002 (Tr. 564), the low back pain continued, and plaintiff noted that pain was worse with her activities of daily living, although her medications were helpful (Tr. 563-4). In November, 2002, the spinal range of motion was noted to be restricted with positive findings including forward flexion of 50 degrees, only 10 degrees of movement from side to side, extension of 5 degrees, a restricted straight leg raising test, and an antalgic gait. (Tr. 797-8). Dr. Kishore prescribed Vioxx and Lortab. (Tr. 798). Her examination was the same in January and February, 2003 (Tr. 793-6), and was noted to be the same in August, 2003 with the plaintiff reporting "no relief" with escalating doses of medications. (Tr. 787-8). However, a February 9, 2004 office note indicates a full spinal range of motion without restrictions, and no straight leg raising limitations, although "multiple joints" were said to have restrictions of range of motion along with crepitus. (Tr. 782). Most of the plaintiff's treatment in 2004 related to neck and shoulder pain after a motor vehicle accident on February 11, 2004, for which Dr. Kishore prescribed physical therapy with some improvement, although she was also given a neurological referral for right facial numbness. (Tr. 765-80). The neurological testing, including an MRI of the brain, was normal. (Tr. 753-7). However, as of Dr. Kishore's last office note on June 8, 2004, he still found that the plaintiff's cervical range of motion was 50 percent or less in all directions,

she had a restricted range of motion of the right shoulder, and there was "tenderness" over the paraspinal muscles. (Tr. 765).

Dr. Kishore wrote a letter dated June 16, 2004 stating that the plaintiff's diagnoses were neck pain, back pain, hypertension, anxiety, and degenerative joint disease, but he did not give any specific findings or restrictions. (Tr. 764). A "progress note" from August 5, 1994, which appears to be incomplete, indicates a "chief complaint" of neck and shoulder pain. (Tr. 763). This note has checkmarks next to boxes indicating that the plaintiff was "able to function" with medications, but had "no relief" with nonsteroidal anti-inflammatory drugs. (Id.). Finally, on November 16, 2004, the physician completed a physical functional capacity form stating that the plaintiff could lift less than 10 pounds, could not perform full-time standing or walking, could never perform any postural activities except for occasional balancing, and had limitations on reaching, pushing, pulling, and working around heights or moving machinery. The reasons given were low back pain, neck pain, and reduced range of motion with pain. (Tr. 759-62).

The ALJ rejected Dr. Kishore's restrictions, stating that they were not supported by clinical and diagnostic evidence and that "such extreme limitations are excessive based on the evidence at hand," and also asserted that there were no "updated" radiographic or diagnostic studies to support his opinion. (Tr. 620). She gave essentially the same reason for not accepting the opinion of Dr. Jorjani. (Tr. 620).

10

Instead, the ALJ emphasized the reports of several one-time examining sources. One of these examiners, Dr. Phillip Tibbs, a neurologist, examined the plaintiff on February 28, 2001 and found only a mild restriction in the range of motion of the back on physical examination, and reviewed a CT scan of the cervical spine which showed only moderate degenerative changes. (Tr. 528). He did not list specific functional restrictions, and opined that the plaintiff would benefit from conservative management. (Tr. 528-9). Dr. Bobby J. Kidd examined the plaintiff on January 28, 2003, and noted that the plaintiff was hypertensive and had a large scar on her right hip and crepitus in both knees, but otherwise her examination was normal. He did not list any functional restrictions. (Tr. 935-9). A lumbosacral spine x-ray was taken, apparently in connection with his examination, which showed a compression fracture of 35 percent at L3, narrowing of L2-3, and plate and screw fixation of the upper margin of the right acetabular fossa. (Tr. 940). Dr. Kidd did not mention this x-ray in his report, and did not initial a portion of the report indicating that he reviewed any studies. (Tr. 939). Dr. Joseph Koenigsmark conducted a consultative examination on February 9, 2005, stating that no diagnostic studies had been requested, and his report gives no indication that he reviewed any objective evidence. (Tr. 799-801). He found elevated blood pressure, crepitus of the right hip, and mild laxity of the knees. (Tr. 802). The plaintiff also had tenderness at approximately the L3-L4 area with spasm. (Id.). Straight leg raising was said to be negative, but did cause some tenderness into the right hip. (Id.). She was only able

11

Jones

to do a "fair" knee squat because of back pain and "size" (the plaintiff was obese, weighing 278 pounds at a height of 67 and one-half inches). Dr. Koenigsmark listed his "diagnostic impressions" as being a "probable" old disc injury in the lumbar spine as well as possibly the cervical spine, old surgery for pinning of the right hip secondary to fracture, continued arthritic changes "most likely" in the fingers, causing decreased dexterity, as well as in the lumbar spine and lower extremities and knees, obesity, high blood pressure, and "anxiety disorder of undetermined diagnosis." (Id.). In his opinion, her ability to lift, sit, and stand would be somewhat limited (Tr. 803), but he completed a functional capacity assessment stating that the plaintiff could perform medium level exertion with a limitation of standing and walking to no more than four hours in an eight-hour day and sitting no more than six hours in an eight-hour day "with rests," occasionally bending, squatting, crawling, climbing, and reaching above shoulder level, and having "mild" restrictions on unprotected heights and moving machinery. (Tr. 806).

Clearly, a remand will be required, since the hypothetical factors are not only inconsistent with the treating source, but also with Dr. Koenigsmark, the only one-time examiner other than Dr. Jorjani to list restrictions, since the hypothetical question did not include restrictions on reaching above shoulder level or working around unprotected heights and moving machinery. There is no basis for finding fewer restrictions than Dr. Koenigsmark, the value of whose opinion is greatly lessened by the fact that he did not review any of the objective studies available to

12

Jones

the treating physician, and which were clearly in the possession of the state agency by the time of his examination. However, his restrictions would be a minimum, given that Dr. Kidd did not express an opinion, and both Dr. Jorjani and Dr. Kishore, the only other physicians to list restrictions, found much greater limitations.

The question still remains whether the plaintiff is correct to argue that it was error to reject the opinion of the treating source, Dr. Kishore.[2] As a treating source, his opinion would normally be entitled to great weight, if supported by objective findings and studies. While there is significant support in terms of objective studies for the plaintiff's lower back problems, as well as objective findings in the physician's 2002 and 2003 office notes, it is also true, as the Commissioner points out, that the plaintiff's 2004 treatment appeared to be focused on her cervical spine problems, and Dr. Kishore apparently indicated on at least one occasion that there were no physical findings related to the low back problems. There are also examinations suggesting a few lower back abnormalities from Dr. Tibbs and Dr. Kidd that are within the relevant period, and the most recent examiner, Dr. Koenigsmark, while finding some lower back problems, did not think that they would limit the plaintiff to

---

[2]The plaintiff also argues that the ALJ also rejected the opinion of Dr. Jorjani without giving any more reasons than the prior ALJ. Since Dr. Jorjani was a one-time examiner, and the record has since been developed with additional examinations and opinions by other sources, his opinion is not controlling, although the Court notes in passing that the ALJ's continued insistence that Dr. Jorjani's opinion was based only on subjective statements is not well supported for the reasons given in the Court's prior Memorandum Opinion.

13

Jones

the degree found by Dr. Kishore.  Given some of the inconsistencies in the treating physician's office notes, the Court concludes that an award of benefits based on Dr. Kishore's August, 2004 assessment would not be appropriate.  Since the case is being remanded on other grounds, the plaintiff can take the opportunity to clarify the treating physician's findings and opinion, and submit other evidence if he so desires.

The decision will be remanded for further consideration.

This the ___12___ day of July, 2006.

G. WIX UNTHANK
SENIOR JUDGE

14